UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA LEVI ALGER and THERESA
WILSON,[1]

      Plaintiffs,

v.

SHERMAN CAMPBELL, PATRICK
WARREN, ALAN GREASON,
GEORGE STEPHENSON, MONA
GOLSON, LEE McROBERTS,
ANDREW JOHNSON, MARCY
BROCKWAY, BRANDI PORTER,
KELLY ROARK, MELISSA
STODDARD, and CHERYL ELLIOT,

      Defendants.

_____/

Case No. 2:24-cv-11831
District Judge Robert J. White
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 22)[2]

### I.    Introduction

---

[1] Although "Theresa Wilson" is listed as a plaintiff in the complaint, it is unclear that any claims are asserted on her behalf. It appears that Theresa Wilson is an unincarcerated third party who was allegedly prevented from assisting Alger in effectively retrieving his property. (ECF No. 1, PageID.14-15). This report therefore focuses on Alger's asserted claims and recommends dismissal of claims brought by Theresa Wilson to the extent there are any.

[2] Upon review of the motions, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff Joshua Levi Alger (Alger), a prisoner at Gus Harrison Correctional Facility (ARF)[3] proceeding *pro se*, has filed a complaint naming Warden Patrick Warren (Warren), Assistant Deputy Warden (ADW) Alan Greason (Greason), Warden Sherman Campbell (Campbell), Deputy Warden George Stephenson (Stephenson), Administrative Assistant Mona Golson (Golson), Deputy Warden Lee McRoberts (McRoberts), ADW Andrew Johnson (Johnson), Residential Unit Manager (RUM) Marcy Brockway (Brockway), Prison Counselor Brandi Porter (Porter), RUM Kelly Roark (Roark), and mail room staff Melissa Stoddard (Stoddard) and Cheryl Elliot (Elliot) as defendants.  Alger claims that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments.  (*Id.,* PageID.6).

Before the Court is defendants' motion to dismiss for failure to state a claim and for summary judgment on the basis of exhaustion.  (ECF No. 22).  The motion is fully briefed and ready for consideration.  (ECF Nos. 28, 29).  For the reasons that follow, the undersigned RECOMMENDS that the motion be GRANTED.  As will be explained, only Alger's claims related to the denial of his legal property and a legal writer are exhausted; however, these claims fail to state a claim for

---

[3] On February 24, 2025, Alger filed a notice of change of address, indicating he is now housed at Bellamy Creek Correctional Facility.  (ECF No. 30).

2

relief.

## II.     Background

The undersigned considers Alger's allegations in the complaint to be true for the purposes of defendants' motion to dismiss. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Alger filed his complaint on July 16, 2024, in which he made the following allegations against defendants:

1. On or about November 4, 2021, Warren, Greason, Stephenson, and Golson at the Macomb Correctional Facility (MRF) deprived Alger of his legal property by failing to act on his requests for return of his property, and from November 1, 2023 to present Campbell, McRoberts, Johnson, Roark, and Brockway at the Gus Harrison Correctional Facility (ARF) did the same. (ECF No. 1, PageID.9-10, 14).

2. ARF staff denied Alger access to the grievance process and denied him a proper hearing regarding his legal property because the hearing was held by Porter, who is not an administrative law examiner. (*Id.,* PageID.13-14).

3. Librarian Trowbridge[4] at ARF denied and continues to deny Alger access to the legal writer program to which he is entitled. (*Id.,* PageID.16; ECF No. 23, PageID.373).

4. ARF staff retaliated against Alger after mishandling his legal property. (ECF No. 1, PageID.17).

## III.     Legal Standards

### A.     Motion for Summary Judgment

---

[4] Trowbridge is not named as a defendant, but the undersigned will address this claim insofar as Alger could be granted leave to amend the complaint if the claim was validly stated.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Alger is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

4

2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### B.    Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). "The plausibility of an inference depends on a host of considerations, including

common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.    Exhaustion of Administrative Remedies

### A.    Standard

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."

*Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so."  *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances.  "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all

7

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underscoring omitted).

"The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

8

B.     Alger's Step III Grievance Report

Defendants argue that Alger failed to exhaust his administrative remedies for any of the claims he asserts in his complaint.  (ECF No. 22, PageID.224-225). Defendants have included in their motion a Step III Grievance Report containing the ten grievances that Alger has pursued through all three steps at ARF.  (*Id.* PageID.203-205).  The report shows the following grievances:

| Grievance No. (ECF No. 22-3, PageID.) | Defendants Grieved at Step I | Issue(s) Grieved at Step I | Grievance Outcome |
|---|---|---|---|
| ARF-24-05-0465-28c (PageID.307-311) | None | The contract attorney did not approve Alger's claim of appeal in time to allow the brief to be filed timely so his claim was dismissed; the legal writer then did not help him with the denial. | Step I: rejected (multiple issues) Step II: rejection aff'd Step III: rejection aff'd |
| ARF-23-11-1216-19z (PageID.312-316) | None | Alger was denied access to "five bags of legal work" that were "falsely classified and handled as abandoned property," resulting in "several negative rulings on cases." | Step I: denied Step II: denied Step III: denied |
| ARF-24-01-0019-28c (PageID.317-321) | None | Non-defendant corrections officer took Alger's medically necessary cane and then wrote him up. | Step I: rejected (multiple issues) Step II: rejection aff'd Step III: rejection aff'd |

9

| ARF-23-11-1188-28e<br><br>(PageID.322-326) | None | Alger was not provided with intake and had several crucial medications discontinued. | Step I: denied<br><br>Step II: denied<br><br>Step III: rejection (untimely at Step III) |
|---|---|---|---|
| ARF-23-11-1175-28e<br><br>(PageID.327-331) | None | Alger was denied sanitary wipes. | Step I: denied<br><br>Step II: denied<br><br>Step III: rejection (untimely at Step III) |
| ARF-23-11-1226-28e<br><br>(PageID.332-336) | Anderson | Alger was denied face towels for three months; he was issued used pajamas and used face towels. | Step I: rejected (multiple issues)<br><br>Step II: rejection aff'd<br><br>Step III: rejection aff'd |
| ARF-23-12-1266-28c<br><br>(PageID.337-341) | None | Alger's property was improperly classified as abandoned to be destroyed, even though it was not sent from MRF as abandoned; his access-to-the-courts and due-process rights were violated. | Step I: rejected (multiple issues)<br><br>Step II: rejected (untimely at Step II)<br><br>Step III: rejection aff'd |
| ARF-23-12-1340-27b<br><br>(PageID.342-346) | None | Alger's requests for release from mental health treatment were denied. | Step I: rejected (contents of policy)<br><br>Step II: rejection aff'd<br><br>Step III: rejection aff'd |

| ARF-23-12-1316-27a  (PageID.347-351) | None | Alger had pleaded to a reduced class III misconduct but it was showing up as a class II misconduct. | Step I: rejected (decision of a hearing officer)  Step II: rejection aff'd  Step III: rejection aff'd |
|---|---|---|---|
| ARF-23-11-1174-01i  (PageID.352-356) | None | Alger was improperly denied an indigent loan in November 2023. | Step I: denied  Step II: denied  Step III: denied |

### C.    Analysis

Defendants argue that only two grievances — ARF-23-11-1216-19z (ARF-1216) and ARF-23-12-1266-28c (ARF-1266) — are relevant to Alger's complaint, and that these grievances were not exhausted.  (ECF No. 22, PageID.224-225). Defendants argue that both grievances failed to name any defendants at Step I, and that ARF-1266 was not properly exhausted because it was untimely received at Step II.  (*Id.*, PageID.225-226).  Thus, defendants argue that Alger's claims should be dismissed for failure to exhaust.  (*Id.*, PageID.225).

### 1.    Grievance ARF-1216

ARF-1216 was filed on November 27, 2023.  (ECF No. 22-3, PageID.315). In it, Alger asserts that his legal property was incorrectly classified and handled as abandoned property, which prevented him from accessing it.  (*Id.*).  However, Alger fails to identify any defendant by name.  (*Id.*)

11

Nevertheless, the grievance was denied on the merits at Step I on January 19, 2023.  (*Id.*, PageID.316).  The decision said the grievance was denied because under PD 04.07.112, *Prisoner Personal Property*, Alger's "property was abandoned property and should have been disposed of" on December 4, 2021, at MCF.  (*Id.*).  Even so, the decision summary expressly allowed Alger to "access the property and remove items that he needed for active cases" because the property contained legal items.  (*Id.*).  Alger was given "30 days for the remaining property to be picked up or mailed home" before it was disposed of.  (*Id.*).

Alger appealed the grievance to Step II, stating that he was given one hour to grab the legal property he needed, which was not enough time.  (*Id.*, PageID.313). Alger further stated that when he asked for more time he was denied.  (*Id.*).  On February 5, 2024, the Step I grievance denial was reviewed and upheld at Step II. (*Id.*, PageID.314).  At Step III, Alger renewed his request, expressing that the property at issue was necessary to his current litigation.  (*Id.*, PageID.313).  His appeal was denied on grounds that the "issue was in fact considered, investigated, and a proper decision was rendered."  (*Id.*, PageID.312).

To properly exhaust a claim under the MDOC's procedural rules, inmates must " 'name[]…all those involved in the issue being grieved' in their initial grievance."  *Reed-Bey v. Pramstaller*, 603 F.3d at 324 (quoting what is now MDOC PD 03.02.130 ¶ S, ECF No. 14-2, PageID.116).  "[A] prisoner ordinarily

does not comply with MDOC 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief." *Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017) (citing *Reed–Bey*, 603 F.3d at 324-25).  "An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits." *Id*.

Here, Alger failed to identify any defendant by name in Steps I, II, and III of ARF-1216, but MDOC did not reject the grievance for any procedural irregularities, instead choosing to address it on the merits.  (ECF No. 22-3, PageID.313, 315).  MDOC denied Alger's Step I grievance and upheld that denial throughout Step II and III.  Thus, MDOC's failure to reject ARF-1216 because he did not name any defendants results in the waiver of any procedural irregularity.  As such, ARF-1216 sufficiently exhausted Alger's claims related to the seizure of legal property.  Stated another way, defendants are not entitled to summary judgment on the grounds that ARF-1216 was not properly exhausted.

### 2. Grievance ARF-1266

ARF-1266 was filed on November 30, 2023.  (ECF No. 22-3, PageID.340).  In that grievance, Alger appealed a decision that classified his five duffel bags of legal property as abandoned.  (*Id.*).  Alger argued, "It's clear that MRF did not consider it abandoned property because they shipped it to me here."  (*Id.*).  He

further stated that when he was paroled to Colorado, he tried to bring the property, but "they refused to allow me to bring it." (*Id.*).  Alger again did not identify any defendant by name in the grievance. (*Id.*)

The grievance was received and rejected at Step I on December 7, 2023. (*Id.*, PageID.341).  The decision said the grievance was rejected under PD 03.02.30 for raising "multiple issues." (*Id.*).  Alger received the Step I rejection on December 11, 2023, and timely appealed the grievance to Step II on December 14, 2023. (*Id.*, Page ID.340).  The previous rejection was upheld at Step II on December 28, 2023. (*Id.*, PageID.334).  Alger renewed his request at Step III, and the rejection was upheld in accordance with PD 03.02.130. (*Id.*, PageID.337-338).

Although ARF-1266 was rejected at Step I for procedural issues, the rejection was based on Alger raising "multiple issues" in the grievance, not a failure to name any culprits. (*Id.*, PageID.341).  A grievance that has been explicitly rejected for a procedural reason—and therefore not decided on its merits—is unexhausted.  *See Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).  However, "the Court is not required to blindly accept the state's application of the procedural rule." *Id.*; *see also Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at *6 (E.D. Mich. Feb. 27, 2019) ("The rejection of a grievance is not, however, the end of the

14

analysis.  It is appropriate for the Court to review the prison official's administration of the state grievance procedure."), *report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).

Defendants offer no argument that ARF-1266 grievance was properly rejected for raising multiple issues.  MDOC Policy Directive 03.02.130 provides that a grievance "may be rejected" if it "contains multiple *unrelated* issues."  (ECF No. 22-2, PageID.232) (emphasis added).  Thus, grievances that contain "multiple issues" that relate to "one claim" and not "multiple *unrelated* issues" should not be rejected for that reason.  *Williams v. Jamsen,* No. 2:21-CV-11631, 2022 WL 18635641, at 15* (E.D. Mich. Dec. 21, 2022) (quoting *Cheatham v. Haye*, No. 2:19-CV-10480, 2020 WL 3481645, at *4 (E.D. Mich. June 26, 2020)).

Here, the record does not support MDOC's rejection of ARF-1266.  *See LaFountain v. Martin,* 334 F. App'x 738, 741 (6th Cir. 2009) (finding that prisoner grievance did not raise "multiple unrelated issues," as grievance coordinator stated, but in fact raised one claim involving retaliation for grievance-filing).  Alger's grievance contains issues relating to one central claim: accessing his duffle bags of legal work.  "[A] grievant need only 'object intelligibly to some asserted shortcoming' and need not 'lay out facts, articulate legal theories, or demand particular relief' " to exhaust his claims.  *Burton* v. *Jones*, 321 F.3d 569, 575 (6th Cir. 2003) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)), *abrogated*

15

*on other grounds by Jones v. Bock*, *supra*.  Alger's grievance rejection was for asserting "multiple issues" but not "multiple *unrelated* issues," because the issues Alger raised therein are clearly related.  Therefore, ARF-1216 was incorrectly rejected and cannot be said to be unexhausted.

Defendants also argue that Alger did not properly exhaust ARF-1266 because MDOC did not timely receive Alger's Step II appeal.  (ECF No. 22, PageID.226).  This argument lacks merit.  MDOC Policy Directive 03.02.130 states that Step I must be submitted "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions."  (ECF No. 22-2, PageID.235).  MDOC received and rejected Step I on December 7, 2023, and Alger received that rejection on December 11, 2023.  (ECF No. 22-3, PageID.338-340).  Alger then dated his Step II appeal three business days later, on December 14, 2023.  (*Id.* PageID.338).  MDOC then received Step II on December 27, 2023, twelve business days from when Alger received his Step I rejection.  (*Id.*).

Although twelve business days is past the deadline, defendants' argument still cuts too fine.  Alger's Step II grievance is dated December 14, 2023, yet MDOC did not receive it until December 27, 2023.  As another court has said: "To measure the five-day period from the date of receipt would be to subject the prisoner to the vagaries of the prison mail system, which are totally beyond the

16

prisoner's control.  A prisoner should not be penalized for the delays in

[interdepartmental] mail." *Fox v. Jenkins,* No. 4:21-CV-12950, 2022 WL

18107234, at *5 (E.D. Mich. Nov. 14, 2022), *report and recommendation adopted,*

2023 WL 22908 (E.D. Mich. Jan. 3, 2023).  Alger drafted Step II in a timely

manner, and the fact that MDOC received it two business days past the deadline,

and thirteen days past the purported date of filing, is irrelevant.  To find otherwise

would cause Alger to be subject to the pace of the prison's mail system, which

essentially renders the grievance process unavailable.  Therefore, Alger's claims

related to his legal property being improperly classified should be considered

exhausted.  In other words, defendants have not met their summary judgment

burden to show that ARF-1216 was unexhausted.

### 3.    Other Claims

Alger appears to have exhausted one other claim in grievance ARF-24-05-

0465-28c, in which he alleges that the denial of legal assistance at ARF violated

his right of access to the courts.  Defendants did not address this grievance, likely

because the person Alger accuses of denying his requests, Librarian Trowbridge, is

not named as a defendant.  However, for the sake of completeness, the undersigned

will note that the grievance does appear to be properly exhausted; just like above,

the grievance was addressed for raising multiple issues, but the issues are not

unrelated, and the rejection is therefore improper.

In sum, Alger has exhausted his claims relating to the denial of legal property at MRF and ARF and access to the courts. Defendants argue that even if they are unexhausted, these claims fail to state a claim for relief. These arguments will be addressed below.

Alger's other claims, including those about the grievance process itself, the availability of electronic messaging, and his packages from Amazon, should be dismissed for failure to exhaust because he has not pursued these claims through the three-step MDOC grievance process.

## V.  Motion to Dismiss for Failure to State a Claim

### A.  Personal and Vicarious Liability

Alger alleges that defendants violated his constitutional rights by denying him meaningful access to his legal property and legal writing services. Defendants claim that Alger failed to clearly show how each named defendant was personally involved in any unconstitutional conduct and that he failed to state any claims arising from their alleged failure to act.

#### 1.  Standard

To state a claim under 42 U.S.C. § 1983, "a plaintiff must 'identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.' " *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042

(6th Cir. 1992)).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).  In other words, "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001).

A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint.  *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).  It is well-established that liability for state actors under § 1983 must be based on more than merely the right to control employees.  *Polk Cnty*, 454 U.S. at 325-26; *Monell*, 436 U.S. at 694-95.  To make out a claim under § 1983, Alger's "allegations must demonstrate that each defendant [ ], through his or her own individual actions, personally violated [his] rights under clearly established law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under the

theory of respondent superior." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted).  However, when the acts of individual employees represent a municipal custom or policy, a municipal defendant can be held liable for the underlying acts.  *Id*. at 690-92.  Such a claim can be made where a plaintiff alleges one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Id*. (citation omitted).

### 2.   Analysis

Defendants argue that Alger fails to show that their individual actions were unconstitutional.  (ECF No. 22, PageID.209).  Alger asserts that before his discharge from MRF to the State of Colorado's custody without his duffle bags of legal property, he spoke and wrote to Warren, Greason, Stephenson, Golson, and the records office transfer coordinator concerning transferring his property with him.  (ECF No. 1, PageID.10).  More specifically, Alger says that during his discharge, Warren and Stephenson assured him that they would forward his legal property to him in Colorado but failed to do so.  (*Id.*, PageID.11).  When Alger returned to MDOC's custody on August 4, 2023, after a parole violation, he says he contacted Stoddard to request his property and Stoddard forwarded it to him at

ARF as "legal property." (*Id.*, PageID.12).  Alger claims that when his duffle bags of legal property arrived, "ARF staff immediately threw a fit and began telling [him] it was abandoned property," he would never be able to access it, and it would be destroyed.  (*Id.*, PageID.13).  Alger argues that Campbell, McRoberts, Johnson, Roark, and Brockway, "all had the authority to intervene, or to [p]revent [his] property from getting destroyed," but failed to act.  (*Id.*, PageID.14).

These allegations are insufficient to state a viable claim against Stoddard, Campbell, McRoberts, Johnson, Roark, or Brockway.  It is well-established that " 'the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  To establish liability, Alger must demonstrate that each defendant was personally involved in the actions underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).  Alger has failed to allege that defendants are personally liable for the alleged constitutional violations, and therefore cannot sustain this claim.

To the extent that Alger intended to state a claim of supervisory liability, he did not allege the existence of an official policy that led to the violation or that someone with decision-making authority ratified illegal actions, nor did he allege inadequate training or supervision or the existence of a practice or custom of

withholding legal property.  *Peatross,* 818 F.3d at 241.  Therefore, Alger's claims

for withholding his legal property should be dismissed for failure to state a claim.

### B.    Due Process

Defendants argue that Alger's due process claims regarding the

administrative process and denial of access to grievances should be dismissed

because defendants' participation in the grievance process does not constitute

actionable unconstitutional conduct.  The undersigned agrees.  To start, Alger

argues that he was denied access to the grievance process, but he does not identify

which defendant or defendants denied him access.  However, regardless of who

Alger intended to assert this claim against, the claim fails because it is well-

established that plaintiffs have no constitutionally protected right to an effective

prison grievance procedure.  *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir.

2002) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir. 1996)); *see*

*also Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Keenan v. Marker*,

23 F. App'x 405, 407 (6th Cir. 2001); *Mays v. Wilkinson*, 181 F.3d 102 at *1 (6th

Cir. 1999); *Hewitt v. Helms*, 459 U.S. 460, 467 (1983).  Although an inmate is

entitled to pursue redress in the federal courts for his underlying constitutional

claims, he cannot raise a claim about the procedures that a state's corrections

system followed or failed to follow in evaluating his grievance.  *See Israfil v.*

*Parks*, 2010 WL 4642978, at *1 (S.D. Ohio 2010).  Put another way, prison

22

officials are not obligated to respond to an inmate's grievances in a way satisfactory to the inmate or even to provide a grievance system at all.  *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, *3 (6th Cir. 2000).  Therefore, the undersigned recommends these claims be dismissed against all defendants for failure to state a claim.

Next, Alger alleges Porter denied his due process rights at a hearing where Porter declared his legal property abandoned.  Alger says Porter is not an administrative law examiner and therefore should not have presided over the hearing.  (ECF No. 1, PageID.14).  He also says that Stoddard, Porter, and Elliot denied him his due process rights when they violated MDOC policy and procedure by depriving him of his property and destroying his mail packages.  Defendants argue that Alger's claims fail because even if he has pled an irregularity in the MDOC process, his adequate state-law remedies foreclose any due process claim regarding the MDOC hearing.

The Due Process Clause of the Fourteenth Amendment provides: "[Nor] shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that "the Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property, provided that the state makes available a meaningful post

23

deprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (discussing

*Parratt*). In *Copeland*, the Sixth Circuit explained Parratt as follows:

> [T]he "Parratt doctrine" permits dismissal of procedural due process claims brought under 42 U.S.C. § 1983 based on the fact that the state provides the claimant an adequate postdeprivation remedy if: 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland*, 57 F.3d at 479. The *Copeland* Court explained that "[i]f these

conditions are present, a procedural due process claim will not be stated unless the

plaintiff pleads and proves that his available state remedies are inadequate to

redress the wrong." *Id*. Applying the *Parratt* doctrine, *Copeland* found that where

the prisoner was allegedly deprived of his property under "an aberrant

procedure"—i.e., procedure that did not "constitute 'established state procedure'"

—such conduct would be "a random an unauthorized act." *Id.* Where the

deprivation stemmed from "unpredictable and unauthorized departures from prison

policy directives," the only process that is due the prisoner is "state tort remedy."

*Id.*

To the extent that Alger has raised a valid issue with his post-deprivation

remedy through the MDOC, he must *also* plausibly allege that his state law

remedies are insufficient. He has not done so. As explained in *Copeland*,

> Michigan provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim

24

and deliver, Mich. Comp. Laws § 600.2920 that provides for a civil
action to recover possession of or damages for goods and chattels
unlawfully taken or detained, and Mich. Comp. Laws § 600.6401, the
Michigan Court of Claims Act, which establishes a procedure to
compensate for alleged unjustifiable acts of state officials.

57 F.3d at 480.  Courts have found that "these procedures 'go far beyond the

requirements of due process.' " *Id.* (quoting *Branham v. Spurgis*, 720 F. Supp.

605, 608 (W.D. Mich. 1989)).

Here, even if Alger had issues with the hearing, he could still challenge the

deprivation of his property under state law.  Therefore, Alger's due process claim

related to the hearing on his property fails to state a claim because there were still

avenues for relief for Alger to pursue before he would plausibly have been denied

due process.  As such, Alger's due process claim related to the denial of legal

property should be dismissed.

### C.    Access to the Courts

In his complaint, Alger asserts that an unnamed librarian at ARF "continues

to deny [him] access to the legal writer program."  (ECF No. 1, PageID.16).  Alger

later identified the librarian as "Trowbridge" in his response to this motion, in

which he further alleges that Trowbridge refused to "make copies," or "give [him]

research materials and even envelopes to send pleadings to a court."  (ECF No. 28,

25

PageID.373).  Alger asserts that Trowbridge refused because he named her as a defendant in one of his other lawsuits.[5]  (*Id*.).

"Inmates have a constitutionally protected right of access to the courts." *Thomas v. Rochell*, 47 F. App'x 315, 317 (6th Cir. 2002).  "To establish a violation of the right of access to the courts, a prisoner must show that prison officials inflicted an 'actual injury.' " *Kirschke v. MacLaren*, No. 18-1606, 2018 WL 6177162, at *2 (6th Cir. Nov. 8, 2018) (*quoting Lewis v. Casey*, 518 U.S. 343, 351-352 (1996)).  "An actual injury occurs when prison officials hinder efforts to pursue non-frivolous legal claims by 'actively interfering with inmates' attempts to prepare legal documents ... or file them.' " *Kirschke*, at *2 (quoting *Lewis*, 518 U.S. at 350).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Although Alger refers to Trowbridge as a defendant in his response, (ECF No. 28, PageID.374), he did not name Trowbridge as a defendant in his complaint. (ECF No. 1, PageID.2-5).  He also has not requested Trowbridge be joined to this action under Fed. R. Civ. P. 19.  Therefore, any asserted claims against Trowbridge should be dismissed without prejudice because she is not a named party.

---

[5] A search of the Eastern District of Michigan's case management database reflects that Alger has filed at least seven other lawsuits in this district as of April 18, 2025.

To the extent these claims are asserted against other parties, which is unclear, Alger has not explained how defendants' conduct has resulted in prejudice to him. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("In order to state a claim for denial of meaningful access to the courts…plaintiffs must plead and prove prejudice stemming from the asserted violation."). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002). Alger's complaint is devoid of detail as to how his alleged denial of access to the courts affected any other case, and thus, he has failed to state an access-to-the-courts claim.

### D.    Retaliation

Lastly, Alger claims he has been subjected to retaliatory conduct. While these claims do not appear to be exhausted, the specific issue of exhaustion of retaliation claims was not thoroughly briefed by the parties. "Courts have held that the term 'retaliation' does not need to be included in a grievance in order to properly exhaust a claim for retaliation." *Doe v. Anderson*, No. 15-13852, 2017 WL 4684614, at *4 (E.D. Mich. Oct. 18, 2017) (citing *Jackson v. Huss*, No. 1:14-CV-426, 2015 WL 5691026, at *7 (W.D. Mich. Sept. 28, 2015)). Thus, for the

sake of completeness, the undersigned will address Alger's retaliation claims on the merits.

Defendants argue that Alger fails to state a claim for retaliation because he does not identify any particular protected conduct or alleged retaliatory acts.  (ECF No.22, PageID.217).  In his complaint, Alger claims that he "ha[s] experienced much retaliation since [defendants] mishandled [his] legal property."  (ECF No. 1, PageID.17).  Alger elaborates in his response that "[defendants] conspired to deny [him] due process by changing the status of [his] property to 'abandoned' property. This was done as pure retaliation and to prevent, [f]rustrate[,] and impede [his] litigation."  (ECF No. 28, PageID.380).

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct and

(3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

28

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Alger's claim lacks the specificity required to satisfy any of the three elements of a retaliation claim and fails to identify any defendants who specifically engaged in retaliatory conduct.

Alger asserts in his response that when he refused to "sign off" on a grievance related to accessing his duffle bags of legal property, "RUM Brockway proceeded to call [him] 'a piece of shit' " and said, "I'm gonna make sure you never see your shit again." (ECF No. 28, PageID.386).  Even if the Court were to consider this allegation, which was not made in the complaint, Alger's claim still lacks the specificity needed to state a retaliation claim because he does not allege that Brockway personally took any adverse actions against him after these remarks.

Alger also asserts in his response that Porter, Elliott, and Stoddard retaliated against him by falsifying documents to deprive him of his legal property, threatening him and assessing him with maximum sanctions on future misconducts, stopping his electronic messages from being sent, and refusing to return his rejected mail to Amazon.  (ECF No. 28, PageID.388).  However, as discussed above, Alger has not exhausted any claims as to Porter, Elliott, or Stoddard.

On the face of the complaint, it is unclear whether any of Alger's exhausted allegations were allegedly retaliatory in nature.  Although Alger claims he experienced retaliation after the mishandling of his legal property, he failed to

identify who committed this alleged retaliation, what their adverse actions were, and how those actions were connected to any alleged protected conduct. Therefore, to the extent Alger seeks to bring claims against defendants for retaliation, those claims should be dismissed for failure to state a claim on which relief may be granted.

## VI.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion to dismiss and for summary judgment (ECF No. 22) be GRANTED.  Specifically, only Alger's claims as to the denial of his legal property and a legal writer are exhausted.  However, these claims should be dismissed for failure to state a claim.  The undersigned also recommends that Theresa Wilson be DISMISSED as a party along with any claims she may have attempted to assert.

If this recommendation is adopted, all of Alger's claims would be dismissed and the case would be closed.

Dated: April 24, 2025                                      s/Kimberly G. Altman____
Detroit, Michigan                                         KIMBERLY G. ALTMAN
                                                          United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without

31

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2025.

s/Dru Jennings
DRU JENNINGS
Case Manager